# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:11cv524

| | |
|---|---|
| **FINLAND FAIR,** | )<br>) |
| Plaintiff, | )<br>) |
| | ) **ORDER** |
| Vs. | )<br>) |
| **GASTON COUNTY FAMILY YMCA,** | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment. For the following reasons, the court will grant the motion and, accordingly, dismiss the case.

## FINDINGS AND CONCLUSIONS

### I. Procedural Background

This case began on March 15, 2010, when plaintiff a black male, filed a Charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination in violation of Title VII on the basis of race and sex. On July 21, 2011, the EEOC issued plaintiff a Letter of Dismissal and Notice of Rights informing him of his right to sue. Plaintiff brought this action on October 20, 2011 against defendants Gaston County Family YMCA ("YMCA"), Debbie Brown, and Tony Sigmon for Title VII discrimination on the basis of race, color, sex, and retaliation.

Defendants subsequently moved for a dismissal of the claims against defendants Brown and Sigmon, as well as the claims for discrimination on the basis of color and retaliation against defendant YMCA (#12). The Magistrate Judge issued a Memorandum and Recommendation

(#18) that the motion be granted, which this court accepted in its Order on July 24, 2012, ECF No. 21.[1]

On October 15, 2012, defendant filed the instant Motion for Summary Judgment seeking dismissal of the remaining claims. Two days later, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court issued an order directing plaintiff to respond to the motion; briefly explaining Fed.R.Civ.P. 56 and the standard thereunder; and cautioning him of the heavy burden he carries in responding to such a motion. Order, October 17, 2012, ECF No. 26. The court subsequently granted plaintiff an extension to respond, giving him until December 14, 2012 to file a response - almost two months after the Motion for Summary Judgment was first filed. Plaintiff has responded, defendant has replied, and plaintiff has since filed a "Response to Defendant's Reply."

## II. Factual Background

Plaintiff was employed as a bus driver for the Central YMCA Afterschool Program at defendant Gaston County Family YMCA ("YMCA") from 2003 until February 25, 2010 when he was terminated for leaving a child under his care unsupervised in the YMCA parking lot two days earlier. That day, after driving a group of children to the YMCA, defendant had found a child sleeping in the back of the bus who had been overlooked by the bus monitor. After waking the child, the two began crossing the parking lot towards the building when apparently plaintiff "lost contact with the child." Pl.'s Resp. 15, ECF No. 30. Plaintiff explained in his deposition as follows:

> We walked through the parking lot, up the sidewalk. I was walking a little ahead of him. I'd look back, and he was there. So I got to the door and I turned around and looked, he wasn't there. Playing in the parking lot. I said, "Come on,

---

[1] This court accepted the Magistrate Judge's Memorandum and Recommendation except that plaintiff's Title VII claims based on "color" and "retaliation" were Dismissed Without Prejudice in accordance with Fed.R.Civ.P. 12(b)(1) and 41(b) as the court lacked subject matter jurisdiction over unexhausted Title VII claims.

[child's name]. I don't have time for this today. Let's go." I didn't hear anything.

Fair Dep. 44:19-25, Aug. 22, 2012, ECF No. 25-2.

Plaintiff proceeded inside to turn in the bus keys and then returned to the parking to look for the child. The child, approximately seven years of age, had successfully made it to the afterschool program by himself. Id. at 45:12-15, 46:22-25. The child's parents were notified of the incident, and the father came in to speak with plaintiff directly.

Two days after the incident, on February 25, plaintiff was terminated during a meeting with defendant's Human Resources Manager. At that meeting, plaintiff was notified that he was being let go because "of what could have happened" as a result of the incident. Id. at 52:3-7. According to defendant, defendant's HR manager stressed that this was the sole reason he was let go. Id.

### III. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**IV.     Discussion**

Plaintiff seeks to establish a Title VII case for discriminatory termination on the basis of gender and race. To do so he must first establish a prima facie case by showing that: "(1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002). If plaintiff is able to successfully prove a prima facie case, the burden of going forward shifts to defendant YMCA, who must then articulate a non-discriminatory reason for the difference in treatment. Id. at 802 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). At that point the burden would then shift back to plaintiff

to show that defendant's non-discriminatory reason was merely pretext for the firing. Id. at 804 (citing McDonnell Douglas).

In the present case, defendant cannot successfully establish a prima facie case of discriminatory firing by defendant YMCA.[2] While factors 1 and 3 are satisfied, factors 2 and 4 are not. It is clear from the undisputed facts that plaintiff's job performance was not satisfactory. In his deposition, plaintiff admitted at least three times that he left a seven year old child alone in the YMCA parking lot while he went to "turn in his keys." Fair Dep. 45:9-10, 46: 23, 48:24. As an employee of the YMCA's After School Program, one of plaintiff's functions was to ensure the safety of the children under his care. Accordingly, under the YMCA's Staff Code of Conduct- which plaintiff signed- it is prohibited for any employee to leave any child unattended. Padgett Aff. Ex. A, ECF No. 25-3. The bottom of this document indicates that a violation of the Code of Conduct "my [sic] result in termination." Id.

In spite of this charge - to above all keep the children under his care safe - plaintiff knowingly left a child unattended in a parking lot, an exceedingly dangerous place for a young child. As an employee of the YMCA for seven years, plaintiff would, or should, have known that doing so could have adverse consequences. And at the meeting where he was fired, plaintiff was told that he was being let go as a result of this failure to keep this child out of harm's way.

Nor can plaintiff point to another employee not of the protected class who was retained under similar circumstances. While he repeatedly argues that the bus monitor, a woman named Cristina who was not fired, satisfies this factor, it is clear that the two employees were not similarly situated. It is true that but for the bus monitor overlooking the sleeping child, plaintiff would not have been responsible for safely escorting him into the building. However, the facts

---

[2] Plaintiff repeatedly references a series of explicit text messages from his co-workers. While they may be an indication of sexual harassment by a co-worker, they do nothing to advance his prima facie case of wrongful termination.

indicate that hers was an innocent mistake of a perhaps overwhelmed employee in charge of a number of small children while plaintiff knowingly left the only child under his direct care unattended in a parking lot. And he did so apparently out of frustration. As he testified, at the time of the incident he said, "I don't have time for this today." Fair Dep. 44:25.

It should be also noted when the bus monitor left the child on the bus, he was not left unattended as plaintiff was still there. This may have been why defendant kept two employees on the bus as a safety mechanism: if the bus monitor accidentally overlooked one of the children, plaintiff would discover the child while conducting his final inspection. If plaintiff, a bus driver, did discover a child overlooked by the bus monitor, under the Staff Code of Conduct it is incumbent upon him to safely escort the child inside.

Furthermore, there was a significant difference in experience between the two employees which explains why plaintiff was let go and the bus monitor was not. Plaintiff had worked at the YMCA for seven years while the bus monitor had worked there for only two or three months. Fair Dep. 122:4. It makes sense that an employer would be inclined to overlook the innocent mistake of an inexperienced employee but not the knowing abandonment of a child by a seasoned employee. So while defendant argues that he is in the same position as the bus monitor, there is ample reason why defendant may have treated them differently. In sum, it is clear that plaintiff was not let go out of some discriminatory motive; he was let go because he knowingly put a child under his care at risk. Accordingly, the court enters the following order.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#25) is hereby **GRANTED** and the remaining claims against defendant YMCA are **DISMISSED** with prejudice.

Signed: January 3, 2013

Max O. Cogburn Jr.
United States District Judge